**V–1 OIL COMPANY, an Idaho corporation, Appellant (Plaintiff),**

v.

**The STATE of Wyoming, Appellee (Defendant).**

No. 96–127.

Supreme Court of Wyoming.

March 14, 1997.

Robert O. Anderson, Riverton, for appellant.

William U. Hill, Attorney General; Thomas J. Davidson, Deputy Attorney General; Mike Barrash, Sr. Assistant Attorney General, for appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

Appellant V–1 Oil Company (V–1), an Idaho corporation, appeals from dismissal of its complaint challenging the constitutionality of legislation distributing funding to the Underground Storage Tank Act.

We affirm.

## ISSUES

V–1 presents the following issues:

1. Is Wyoming Statute § 39–6–302(g) unconstitutional due to there being no object clause within it?

2. Is the application of proceeds spent by § 39–6–305(k)(vi) unconstitutional as applied?

3. Is the collection of and application of the proceeds generated by Wyoming Statutes § 39–6–215 and § 39–6–914 unconstitutional?

Appellee State of Wyoming frames the issues as:

1. Does the mineral severance tax under W.S. 39–6–302(g) violate Article 15, Section 13 of the Wyoming Constitution, which requires that every "law" imposing a tax shall have an "object" or "use of proceeds" clause directing how the revenue from such tax is to be distributed?

2. Does W.S. 39–6–305(k)(vi) provide for "ongoing" or only "one-time" distributions?

3. Are proceeds from the one cent per gallon *fuel* taxes under W.S. 39–6–215 and 39–6–914 somehow being "fraud[ulently]" misused for purposes of the leaking storage tank accounts (W.S. 35–11–1424 and 1427), contrary to Article 15, Section 16 of the Wyoming Constitution, which requires that all fuel taxes go only to the state highway fund?

4. Did the District Court's March 28, 1996 Order (which V–1 now asks this Court to "reverse,") properly deny V–1's request for class action status and for designation as representative for the class under Rule 23(a)(4) of the Wyoming Rules of Civil Procedure?

## FACTS

The State of Wyoming collects fuel taxes which are required by Art. 15, § 16 of the Wyoming Constitution to be distributed solely for highway funding. The State of Wyoming also collects mineral severance taxes but their distribution is not limited by the state constitution. Before 1989, a portion of these mineral severance taxes was distributed to highway funding. 1989 Wyo.Sess.Laws Ch. 270. In 1989, the Wyoming legislature enacted a statutory scheme called the Underground Storage Tank Act designed to abate contamination from leaking underground storage tanks and provide financial assistance to affected businesses. *Id.* The legislature funded this act with mineral severance tax revenues previously distributed to the state highway fund. Wyo.Stat. § 39–6–305(k)(vi) (1989); 1989 Wyo.Sess.Laws Ch. 270; Wyo.Stat. § 39–6–302(g) (1989). To offset the consequent revenue loss to the highway fund, the legislature levied a penny per gallon fuel tax which is directly distributed to the state highway fund. Wyo.Stat. § 39–6–215(b) and 914(b) (1989).

V–l filed a class action suit which requested that the district court find V–1 to be a proper party to represent the class, and sought a declaratory judgment and injunction establishing that the offsetting scheme was unconstitutional under Wyoming's state constitution. The district court denied the class action request for failure to satisfy the requirements of WYO.R.CIV.P. 23(a)(4) and dismissed the claims under WYO.R.CIV.P. 12 (b)(6) for failure to state claims on which relief can be granted. This timely appeal followed.

## DISCUSSION

*Standard of Review*

Although V–1 questions the legislature's wisdom of the underground storage tank program and the legislature's intent in enacting the funding scheme, the State appropriately moved that V–1's complaint be dismissed under WYO.R.CIV.P. 12(b)(6). While that motion admitted the factual allegations of the complaint, it does not admit the legal conclusion that the State acted unlawfully. *Sump v. City of Sheridan,* 358 P.2d 637, 639 (Wyo. 1961). V–1's attack on the funding of the underground storage tank program is based upon two constitutional grounds: whether the funding scheme involves a fuel tax in violation of Art. 15, § 16 of the Wyoming Constitution and whether the mineral severance tax levied for the purpose of funding the tank program states that purpose in a manner which satisfies Art. 15, § 13 of the Wyoming Constitution.

 Issues of constitutionality present questions of law. We review questions of law under a *de novo* standard of review and afford no deference to the district court's determinations on the issues. *Anderson v. Bommer,* 926 P.2d 959, 961 (Wyo.1996). In reviewing a constitutionally based challenge to a statute, we presume the statute to be constitutional and any doubt in the matter must be resolved in favor of the statute's constitutionality. *Thomson v. Wyoming In-Stream Flow Committee,* 651 P.2d 778, 789–90 (Wyo.1982). V–1 bears the burden of proving the statute is unconstitutional. *Pfeil*

*v. Amax Coal West, Inc.,* 908 P.2d 956, 961 (Wyo.1995).

*Constitutionality of Funding Scheme*

Article 15, § 16 of the Wyoming Constitution provides as follows:

§ 16. **Disposition of fees, excises and license taxes on vehicles and gasoline.**

No moneys derived from fees, excises, or license taxes levied by the state and exclusive of registration fees and licenses or excise taxes imposed by a county or municipality, relating to registration, operation or use of vehicles on public highways, streets or alleys, or to fuels used for propelling such vehicles, shall be expended for other than cost of administering such laws, statutory refunds and adjustments allowed therein, payment of highway obligations, costs for construction, reconstruction, maintenance and repair of public highways, county roads, bridges and streets, alleys and bridges in cities and towns, and expense of enforcing state traffic laws.

 This provision expressly requires that the proceeds of all state-levied vehicle and gasoline taxes must be distributed exclusively to public highway expenses. Appellants claim that revenue collected from mineral severance taxes and a one-cent fuel tax is being transferred "fraudulently" for the purpose of funding the underground storage tank program in violation of this constitutional provision. Appellants' proof of fraud is a bare allegation that the transfers were designed by the legislature with an intent to circumvent the constitution. Such proof is insufficient to state a claim for fraud which must be established by clear, unequivocal and convincing evidence, and will never be presumed. *Osborn v. Emporium Videos,* 870 P.2d 382, 383 (Wyo.1994) (quoting *Lavoie v. Safecare Health Service, Inc.,* 840 P.2d 239, 252 (Wyo.1992)).

The funding scheme enacted by the legislature to fund the underground storage tank program is set out in several statutes. The revenues for the program result from a portion of an oil and gas severance tax of two percent (2%) levied in WYO.STAT. § 39–6–302(g). Before the program was enacted in 1989, this revenue went to the state highway

fund as directed by Wyo.Stat. § 39–6–305(k)(iii). Now it is distributed to accounts set up under Wyo.Stat. § 35–11–1424 and 1427 for the underground storage tank program. As seen below, Section 305(k)(vi) instructs in the emphasized portion how the distribution to the tank program is to be accomplished:

> (vi) Before making any distributions under paragraph (iii) of this subsection, distributions as provided in this paragraph shall be made. An amount equal to the amount of tax collected under W.S. 39–6–215 and 39–6–914(c) shall be distributed to the general fund until the amount so distributed equals ten million dollars ($10,000,000.00). Thereafter an amount equal to the amount of tax collected under W.S. 39–6–215 and 39–6–914 shall be distributed to water development account I until the amount so distributed equals two million five hundred thousand dollars ($2,500,000.00). After the distributions are made to the general fund and the water development account I, distributions shall be made as follows. **An amount equal to the amount of tax collected under W.S. 39–6–215 and 39–6–914 shall be distributed to the corrective action account created by W.S. 35–11–1424 and to the financial responsibility account created by W.S. 35–11–1427 in an inverse proportion to the amount in the two (2) accounts.**

Wyo.Stat. § 39–6–305(k)(vi) (Cum.Supp.1996) (emphasis added).

The emphasized part of Section 305(k)(vi) sets out a procedure for correlating the distribution of mineral severance taxes to the underground storage tank program with the collection of a one cent fuel tax imposed by Wyo.Stat. § 39–6–215 and Wyo.Stat. § 39–6–914. These statutes require the fuel tax revenues to be directly deposited in the state highway fund in Wyo.Stat. § 39–6–215(b) and Wyo.Stat. § 39–6–914(b). The collection of the one cent fuel tax ceases when the balances in the tank accounts each reach ten million dollars and resumes when the balance in either tank account falls below four million dollars. Wyo.Stat. § 39–6–215(c) (1994); Wyo.Stat. § 39–6–914(c) (1994). We agree with the State that the language from the three statutes is read as requiring collection of a one cent fuel tax and then distribution of the proceeds to the state highway fund in a manner offsetting the mineral severance taxes reallocated to the underground storage tank program.

Whether a statute is contrary to a constitutional prohibition or restriction is to be determined by the judiciary. *Witzenburger v. State ex rel. Wyo. Community Dev. Authority*, 575 P.2d 1100, 1117–18 (Wyo. 1978). Article 15, § 16 of the Wyoming Constitution is unambiguous and plainly requires that any vehicle or gasoline tax be committed exclusively to public highway expenses. The plain language of the statutes set out above requires that the fuel taxes be directly deposited to the state highway fund, meaning the statute complies with the constitution. Neither reallocation of mineral severance taxes nor offsetting that reallocation by a fuel tax is specifically prohibited under Art. 15, § 16, and constitutional principles do not permit our finding a prohibition not definitely articulated. We must, therefore, rule that the reallocation and offsetting is constitutional. *See Simms v. Oedekoven*, 839 P.2d 381, 385 (Wyo.1992).

We have considered *V–1 Oil v. Idaho Petroleum Clean Water Trust Fund*, 128 Idaho 890, 920 P.2d 909 (1996), *cert. denied* —— U.S. ——, 117 S.Ct. 514, 136 L.Ed.2d 403 (1996), in which the Idaho Supreme Court determined that their similar constitutional provision was violated by the legislative scheme to fund its storage tank program, and cannot derive any principles from that decision which would cause us to conclude that the Wyoming statutes are unconstitutional as applied. *V–1 Oil*, 920 P.2d at 912–913. The Idaho statute required distributors of petroleum products to pay a one cent per gallon "transfer fee" on petroleum products. *Id.* at 911. The proceeds of the fee were committed to the Idaho Petroleum Clean Water Trust Fund which insured storage tank owners. *Id.* The Idaho Supreme Court ruled that the fee constituted a gasoline tax and its use for storage tank expenses violated the constitutional provision requiring dedication of fuel taxes exclusively to public highway expenses. *Id.* at 913.

■ The Wyoming statutory scheme is distinguishable. Proceeds from the one cent per gallon fuel tax are not committed to the underground storage tank program. The use of fuel taxes to offset the loss to highway funding caused by a valid reallocation of another type of tax does not present a situation where the legislature is attempting to do indirectly that which it cannot do directly. *Witzenburger*, 575 P.2d at 1117. It is not, however, an illegal evasion to accomplish a desired result, lawful in itself, by discovering a legal way to do it. *Clayton v. Kervick*, 52 N.J. 138, 244 A.2d 281, 288 (1968). Using mineral severance taxes to fund the underground storage tank program, a lawful program, is not prohibited by our state constitution. We hold that the statutory scheme does not violate Art. 15, § 16 of the Wyoming Constitution.

*Constitutionality of Object Statement*

V–1 contends that the two percent mineral severance tax imposed in Wyo.Stat. § 39–6–302(g) does not state its object as required by the Wyoming Constitution. V–1's argument is not that it cannot determine the object of the tax which is specifically stated in § 39–6–305(k), but that the object requirement of Art. 15, § 13 of the Wyoming Constitution should be strictly construed to compel the placement of the language describing the purpose of the tax in the same statutory subsection which imposes the tax.

These subsections were created by the 1981 Session Laws, Chapter 49 which states:

AN ACT to amend W.S. 39–6–302 by creating a new subsection (g) and 39–6–305 by creating a new subsection (k) relating to mineral severance taxes; providing for a 2% severance tax on oil and gas; providing for distribution of the tax proceeds; and providing for an effective date.

\* \* \* \* \* \*

**Section 1.** W.S. 39–6–302 by creating a new subsection (g) and 39–6–305 by creating a new subsection (k) are amended to read:

**39–6–302. Excise taxes on extraction of minerals.**

(g) In addition to other excise taxes provided by this section there is levied a tax of two percent (2%) of the value of the gross product extracted upon the privilege of severing or extracting oil and gas.

**39–6–305. Disposition of revenue collected.**

(k) The state treasurer shall transfer revenue collected under W.S. 39–6–302(g) to the trust and agency fund to be distributed as follows:

(i) Three-eighths (3/8) to incorporated cities and towns; . . . .

(ii) One-eighth (1/8) to counties; . . . .

(iii) One-third (1/3) to the state highway fund;

(iv) One-twelfth (1/12) to the permanent mineral trust fund; and

(v) One-twelfth (1/12) to the Wyoming water development account to be distributed pursuant to W.S. 39–6–305(g) for the improvement of water projects completed and in use prior to 1970.

\* \* \* \* \* \*

In 1989, in the same chapter of the session laws enacting the underground storage tank program, Wyo.Stat. § 39–6–305(k) was amended to add section (vi) which is set out above as amended in 1990. 1989 Wyo.Sess. Laws Ch. 270. 1990 Wyo.Sess.Laws, Ch. 98.

Article 15, § 13 of the Wyoming Constitution states:

No tax shall be levied, except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied.

Wyo. Const. Art. 15, § 13.

We have said that "[t]his provision is based on the general proposition that 'a taxpayer has a right to know the purposes for which his money is appropriated.' " *Bd. of Cty. Comm'rs v. Laramie County Sch. Dist.*, 884 P.2d 946, 953 (Wyo.1994). In interpreting this provision, we have determined that it imposes at least three requirements: 1) that taxes be levied under statutory authority and in the manner provided by law, *Kelsey v. Taft*, 72 Wyo. 210, 217, 263 P.2d 135, 136–37 (Wyo.1953); 2) that the law state the object of the tax, *Sullivan v. Blakesley, et al.*, 35

Wyo. 73, 86, 246 P. 918, 922 (1926); and, 3) that taxes be applied for the purpose for which they are levied. *Campbell Cty. Sch. Dist. No. 1 v. Bd. of Cty. Comm'rs. of Campbell Cty.*, 884 P.2d 960, 963 (Wyo.1994).

 Generally, constitutional provisions are to be broadly and liberally construed with a view to upholding acts of the legislature if, in doing so, the purpose of the constitutional provision is achieved. *Simms*, 839 P.2d at 385; *Brinegar v. Clark*, 371 P.2d 62, 66 (Wyo.1962). The purpose of the constitutional provision, to state the object of the tax, was satisfied by the language of Chapter 49 of the 1981 Session Laws and as amended. We have said that we construe all parts of an act as a whole because it embodies the complete legislative act, and division of a law into sections has no substantive meaning. *France v. Connor*, 3 Wyo. 445, 454, 27 P. 569, 572 (Wyo.1891). We find no violation of the constitution when the legislature chooses to state the disposition of the tax revenue in a different subsection from the one imposing the tax. This method permitted a complex distribution to be set forth in a clear, understandable manner in Wyo.Stat. § 39–6–305(k) and met the requirement of the constitutional provision when the purpose of the tax was stated at the same time as the tax was levied.

*Distributions*

V–1 contends that the distribution of funding set out in Wyo.Stat. § 39–6–305(k)(vi) provides for a one-time distribution which is unconstitutionally vague. We agree with the district court's determination that this statute provides continuing, not one-time, funding of the storage tank accounts each fiscal year on a "continuing, quarterly basis" as set out in Wyo.Stat. § 39–6–305(a)(ii). V–1 presents no argument as to why this plain language of the statute does not apply to the funds and the issue will not be further considered.

## CONCLUSION

The State was concerned that V–1 had reserved an appeal of the order denying its class action. This claim and all other claims are resolved by the discussion above. The statutes are constitutional and the district court's order denying class action status and dismissing the complaint with prejudice is affirmed.