9 P.3d 519

**V–1 OIL COMPANY, an Idaho Corporation, and Mark J. Bennion, d/b/a B–D Oil Company, Idaho Falls, May Term of Court Plaintiffs–Appellants,**

v.

**IDAHO STATE TAX COMMISSION, and Michael Southcombe, Colleen Grant, Du Wayne D. Hammond, Jr., and Anne Barker, Commissioners of the Idaho State Tax Commission, Defendants–Respondents.**

No. 25260.

Supreme Court of Idaho,
Idaho Falls, May Term of Court.

Aug. 1, 2000.

Rehearing Denied Sept. 26, 2000.

See also 128 Idaho 890, 920 P.2d 909.

Simpson & Gauchay, Idaho Falls, and Hawley Troxell Ennis & Hawley, Boise for appellants. Richard G. Smith argued.

Honorable Alan G. Lance, Attorney General, Boise, for respondents. Brian D. Nicholas argued.

SCHROEDER, Justice.

V–1 Oil Company and Mark J. Bennion, d/b/a B–D Oil Company, appeal the summary judgment decision of the district court that the "Trust Fund" tax (Idaho Code §§ 41–

4908 – 4909) is a constitutional and proper exercise of the legislature's authority. The Court affirms the decision of the district court.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

The legislature passed the Petroleum Clean Water Trust Fund Act (I.C. §§ 41–4908 – 4909) in 1990 to insure owners and operators of petroleum storage tanks against possible releases of petroleum from leaky storage tanks. The funds for this trust come primarily from the imposition of a one cent per gallon "transfer fee" on all petroleum products delivered or stored in Idaho. The charge is imposed upon the first licensed distributor who receives the product within the state.

V–1 Oil is a licensed distributor of motor fuels with its principal place of business in Bonneville County. V–1 Oil sought and obtained a ruling from a district court that the one cent transfer fee was really a tax and that the allocation of the proceeds from the tax violated Art. VII, § 17 of the Idaho Constitution.[1] Relying on this ruling, V–1 Oil stopped remitting the tax in November 1993. Mark J. Bennion, d/b/a B–D Oil Company, a licensed distributor of motor fuels, also stopped remitting the tax, although he had not been a party to the litigation. As a result of the distributors' failure to pay the tax, the Tax Commission issued deficiencies against both distributors. The Tax Commission appealed the district court's ruling.

This Court affirmed the district court, determining that the one cent fee was in fact a tax and that the allocation of the proceeds from the tax was unconstitutional. *V–1 Oil Co. v. Idaho Petroleum Clean Water Trust*

1. Article VII, § 17 of the Idaho Constitution reads as follows:

**Gasoline taxes and motor vehicle registration fees to be expended on highways.** On or after July 1, 1941, the proceeds from the imposition of any tax on gasoline and like motor vehicle fuels sold or used to propel motor vehicles upon the highways of this state and from any tax or fee for the registration of motor vehicles, in excess of the necessary costs of collection and administration and any refund or credits authorized by law, shall be used exclusively for the construction, repair, maintenance and traffic supervision of the public highways of this state and the payment of the interest and principal of obligations incurred for said purposes; and no part of such revenues shall, by transfer of funds or otherwise, be diverted to any other purpose whatsoever.

*Fund,* 128 Idaho 890, 920 P.2d 909 (1996) (*V–1 Oil I* ).[2]

The legislature amended I.C. § 41–4909 in an attempt to comport with the requirements of Art. VII, § 17 of the Idaho Constitution. 1990 Idaho Sess. Laws, Ch. 119, p. 276. The current legislation provides for 77% of the tax proceeds to go to the Idaho Transportation Department for public highway construction, maintenance and repair, 3% to the Idaho Department of Parks and Recreation, and 20% to the Petroleum Clean Water Trust Fund. I.C. § 41–4909. The legislature arrived at this reallocation by reading Art. VII, § 17 to distinguish between gas used to propel motor vehicles upon the highway and gas not used to propel motor vehicles upon the highway. The legislature estimated that 20% of tax revenues is derived from the sale of fuel which is not used to propel motor vehicles upon the highway. *Senate Committee on Transportation: Minutes on H: 289,* Tuesday, March 11, 1997 (statement of Director Dwight Bower). The legislature reasoned that only the tax upon highway-use fuel is limited by the Idaho Constitution, and that 20% of the tax revenues from the sale of petroleum products may be channeled to non-highway purposes without running afoul of Art. VII, § 17. V–1 Oil and B–D Oil (V–1 Oil) challenge the imposition and allocation of the one cent per gallon tax imposed by I.C. § 41–4908 on both statutory and constitutional grounds.

V–1 Oil asserts that the transfer tax statute, I.C. § 41–4908, is limited by I.C. § 63–2431, which states that the motor fuels taxes provided for in I.C. § 63–2401 – 2443 shall be in lieu of all other taxes imposed upon gasoline, aircraft, engine fuel or special fuels. Idaho Code § 63–2405 effectively limits the motor fuel tax to twenty-five cents per gallon; thus, V–1 Oil argues, I.C. § 49–4908, which increases the total to twenty-six cents per gallon, is not valid. V–1 Oil also contends that I.C. §§ 41–4908(7) and 41–4909

violate the Due Process and Equal Protection Clauses of the United States Constitution.

V–1 Oil filed its complaint in the district court. The Tax Commission moved for summary judgment, which was granted. The district court held that I.C. § 41–4908 impliedly repealed I.C. § 63–2431, stating that if it did not repeal I.C. § 63–2431, I.C. § 41–4908 must at the very least be interpreted as controlling. The district court further held that I.C. § 41–4908 violates neither the guarantee of due process nor equal protection. V–1 Oil appealed.

## II.

### STANDARD OF REVIEW

This Court reviews a lower court's statutory interpretation *de novo. Thomas v. Worthington,* 132 Idaho 825, 828, 979 P.2d 1183, 1186 (1999). Because constitutional questions are purely questions of law, they are also reviewed *de novo. Idaho State Insurance Fund v. Van Tine,* 132 Idaho 902, 905–906, 980 P.2d 566, 569–570 (1999).

## III.

### THE LEGISLATURE DID NOT ERR IN INTERPRETING THE IDAHO CONSTITUTION.

Article VII, § 17 of the Idaho Constitution states that "proceeds from the imposition of any tax on gasoline and like motor vehicle fuels sold or used to propel vehicles upon the highways of this state ... shall be used [ ] exclusively for the construction, repair, maintenance and traffic supervision of the public highways of this state...." The legislature interpreted this language to create an on-road/off-road distinction in classifying which revenues are earmarked for the public highways of Idaho. Article VII, § 17 limits only the proceeds from the tax on fuels sold or used to propel vehicles *upon the highways.* There is broad language in *V–1 Oil I* that would appear to contradict this

2. The Court wrote: "The creation and collection of the transfer fee was not unconstitutional pursuant to Article VII, Section 17 of the Idaho Constitution, but rather the appropriation of the revenue, raised from the transfer fee, to the Trust Fund was unconstitutional ... V–1 Oil is not entitled to a refund of the transfer fees it has paid, based upon our holding that the transfer fee was not unconstitutional and that the appropriation of the transfer fees to the Trust Fund was unconstitutional." 128 Idaho at 894, 920 P.2d at 913.

interpretation, but the Court was not called upon to address the issue of an on-road/off-road distinction as to the use of taxes on motor vehicle fuel. The legislative interpretation is consistent with the language in Art. VII, § 17 which requires only that the proceeds of taxes on petroleum products sold or used to propel motor vehicles on the public highways be used for highway purposes.

Under the current statutory scheme, 77% of the proceeds from the tax is channeled to the highway fund, 3% is used by the Department of Parks and Recreation and 20% is earmarked for the Trust Fund. The 1997 amendment to I.C. § 41–4909 conforms to the requirements of Art. VII, § 17 so far as the allocation to the Trust Fund is concerned.

### IV.

## THE TRUST FUND TAX DOES NOT VIOLATE THE DUE PROCESS OR EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION.

In *V–1 Oil I* the Court examined the constitutionality of I.C. § 41–4908 under Art. VII, § 17 of the Idaho Constitution. The Court held that "the creation and collections of the transfer fee was not unconstitutional pursuant to Article VII, Section 17 of the Idaho Constitution, but rather the appropriation of the revenue ... to the Trust Fund was unconstitutional." *Id.* at 894, 920 P.2d at 913. V–1 Oil now attacks the constitutionality of I.C. § 41–4908 under the Due Process and Equal Protection Clauses of the U.S. Constitution.

### A. Applicable Law

■ The precedent of the United States Supreme Court is binding when this Court interprets the U.S. Constitution. (*See Howlett v. Rose,* 496 U.S. 356, 367, 110 S.Ct. 2430, 2438, 110 L.Ed.2d 332, 347 (1990) "Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forum—although both might well be true—but because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature.").

### B. Due Process

In *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the U.S. Supreme Court noted the approach to constitutional attacks upon economic legislation under the Due Process Clause:

It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. *Citations omitted.*

■ V–1 Oil contends that the 1997 amendments effect a denial of due process by creating a statutory taxation scheme that has no rational relationship to a legitimate legislative purpose. However, there is a legitimate purpose behind the legislation; that is, the protection of the environment from leaky underground storage tanks. A tax upon those who distribute petroleum products in the state is rationally related to the goal of minimizing the potential harmful effects of petroleum products. The legislature has not acted in an arbitrary or irrational way in levying a tax on distributors of petroleum products to create an insurance fund which is directly related to the use of those products.

### C. Equal Protection

The U.S. Supreme Court has stated the standard for an equal protection challenge as follows:

In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenges if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211, 221 (1993). Justice Thomas explained that because a legislature is never

required to articulate its reasons for enacting a statute, the absence of "legislative facts" has no significance in rational-basis analysis. *Id.* at 315, 113 S.Ct. at 2102, 124 L.Ed.2d at 222.

In this case, the classification (on-road/off-road) does not proceed along suspect lines, nor does it infringe upon fundamental constitutional rights. Certainly, there is a state of facts that provides a rational basis for this classification. It is reasonable to distinguish between those fuels which are used to propel vehicles on the highway and fuels which are used for off-road purposes (e.g. farming, recreational vehicles) when assessing a fuel tax, the proceeds of which will be channeled to highway maintenance.

The legislature found that 20% of all fuel is used for off-road purposes and 80% is used upon the highway. *Senate Committee on Transportation: Minutes on H: 289,* March 11, 1997 (statement of Director Dwight Bower). Although V–1 Oil argues that there is no empirical evidence to support the line drawn by the legislature, such empirical evidence is unnecessary. "[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C.,* 508 U.S. at 315, 113 S.Ct. at 2102, 124 L.Ed.2d at 222.

## V.

## TO THE EXTENT THAT THE TWO STATUTES ARE INCONSISTENT, I.C. § 41–4908 IMPLIEDLY REPEALS I.C. § 63–2431.

At issue is whether the later statute, I.C. § 41–4908, impliedly repealed the earlier statute, I.C. § 63–2431. In the recent case of *Chapple v. Madison County Officials,* 132 Idaho 76, 967 P.2d 278 (1998), this Court discussed its approach to inconsistent legislation. It wrote:

If an inconsistency exists between an earlier enactment and a later enactment such that the legislature could not have intended the two statutes to operate contemporaneously, we will imply that the legislature intended to repeal the earlier enactment by the later enactment.

*Id.* at 79, 967 P.2d at 281.

Repeal of a statute by implication is disfavored in the law, and a statute will not be impliedly repealed if there is any other reasonable construction of the statutes. Further, in order for a statute to effect a repeal of an earlier statute, both statutes must relate to the same subject and have the same object or purpose. *Id.*

Idaho Code § 41–4908 has the same subject and purpose as I.C. § 63–2431. Although V–1 Oil argues that the subject and purpose are different between the two statutes, V–1 Oil's argument lies in its characterization of the differences, rather than any real underlying difference. The subject of I.C. § 63–2431 is excise tax; its purpose is to place a cap on the amount of tax which the state may collect. The subject of I.C. § 41–4908 is excise tax; its purpose is to impose an additional tax, which directly conflicts with the earlier cap set by I.C. § 63–2431.

In determining whether I.C. § 41–4908 impliedly repeals I.C. § 63–2431, the Court must inquire as to whether a reasonable alternative exists. (*Cf. Tetzlaff v. Brooks,* 130 Idaho 903, 904, 950 P.2d 1242, 1243 (1997) "We will not declare [a statute to be impliedly repealed] if there is any other reasonable construction of the statutes.")

V–1 Oil suggests two alternatives to finding an implied repeal. First, that I.C. § 41–4908 be struck down as a violation of the Due Process Clause. However, this Court has already determined that the legislation does not violate the Due Process Clause. Second, V–1 Oil suggests that this Court interpret the one cent tax imposed by I.C. § 41–4908 as a portion of the twenty-five cent tax described in I.C. § 63–2431. This is not a reasonable alternative because it would require this Court to rewrite legislation in order to reconcile the statutes.

Idaho Code § 41–4908 is an inconsistent later statute which has the same subject and purpose as I.C. § 63–2431. There is no reasonable alternative to a holding that the later statute impliedly repealed the earlier statute. To the extent the two statutes are inconsis-

tent, I.C. § 41–4908 impliedly repeals I.C. § 63–2431.

## VI.

## CONCLUSION

The decision of the district court upholding the validity of the Trust Fund tax (I.C. § 41–4908) and its current statutory scheme of allocation (I.C. § 41–4909) is affirmed. The case is remanded for a determination by the district court of the current amount due to the Idaho State Tax Commission. Costs are awarded to the Idaho State Tax Commission.

Chief Justice TROUT, Justices WALTERS and KIDWELL, and Justice Pro Tem HARDING concur.